UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN BURNS, <br><br> Plaintiff, <br><br> v. <br><br> JEH JOHNSON as Secretary of United States Department of Homeland Security, Transportation Security Administration, <br><br> Defendant. | Civil Action No. 13-cv-12155 |

## MEMORANDUM AND ORDER
*(revised and unsealed June 29, 2015)*

**CASPER, J.**                                                                                                                          June 18, 2015

### I. Introduction

Plaintiff Kathleen Burns ("Burns") originally filed this lawsuit against Defendant Jeh Johnson in his official capacity as the Secretary of the United States Department of Homeland Security, Transportation Security Administration (the "Secretary") and Supervisory Air Marshal in Charge David Johnson ("SAC Johnson") alleging discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I), retaliation in violation of Title VII (Count II), intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), sexual harassment in violation of Title VII (Count V), the creation of a hostile work environment in violation of Title VII (Count VI) and violation of the Massachusetts Declaration of Rights (Count VII). D. 1. Following the Court's dismissal of

1

all but Counts I and VI, as well as the claims against SAC Johnson in both his individual and official capacities, D. 35, the Secretary has moved for summary judgment on the remaining claims. D. 49. For the reasons stated below, the Court ALLOWS the motion.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact, and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citation omitted).

## III. Factual Background[1]

From 2002 until June 2012, Burns worked in the Boston Operations Unit of the Federal Air Marshal Service ("FAMS"), a division of the Transportation Security Administration. D. 61 ¶¶ 1, 21, 45. In 2012, Burns was one of few female employees at the Boston office. Id. ¶¶ 5, 11. In addition, she was one of five employees who were not law enforcement officers. Id. ¶ 6. In

---

[1] The following facts are drawn from the Secretary's Statement of Material Facts, D. 61, and from Burns's Response to Defendant's Statement of Material Facts, D. 69, and are construed in the light most favorable to Burns as the non-moving party.

May 2012, Burns was in charge of assigning Federal Air Marshals ("FAMs") to international flights. Id. ¶¶ 17, 23. Burns spent about 75% of her time at work coordinating international flights with FAMs' schedules and the remaining 25% fulfilling the rest of her job duties. Id. ¶ 28. Burns worked an alternative, 32 hour-per-week schedule so she could care for her five children. Id. ¶ 26; D. 69 ¶¶ 90-91. Burns worked from 12:30 p.m. to 9:00 p.m. on Thursday through Sunday each week. D. 69 ¶ 91.

In April 2012, SAC Johnson visited the Boston office in advance of assuming his leadership position. D. 61 ¶¶ 29-30. During his visit, SAC Johnson met Burns and inquired, "who are you and what do you do for me?" D. 61 ¶ 60.

A few weeks after assuming the SAC position, SAC Johnson decided to change the way FAMs were assigned to international flights by reassigning Burns's scheduling responsibility to nine Supervisory FAMs, all of whom were male. Id. ¶¶ 31, 126. Accordingly, Burns would no longer be responsible for assigning FAMs to international flights. On May 31, 2012, SFAM James Ouelette, one of Burns's supervisors, informed her that her international scheduling duties would be reassigned. D. 61 ¶ 37.

SAC Johnson regularly carried a baseball bat with him at the office. Id. ¶ 55. Every time Burns saw SAC Johnson, he was carrying this baseball bat. D. 69 ¶ 56. A few weeks after SAC Johnson joined the office, on May 24, 2012, he approached Burns in the Operations office and commented, "so you do still work here." Id. ¶ 58. Later that same day, SAC Johnson again approached Burns and asked her about her background and work schedule. Id. Johnson "said he had done his homework on [Burns] . . . and that everyone had spoken very highly about her [but] he was concerned because someone in international planning had told him that [Burns] was sometimes hard to reach." Id. Burns denied being hard to reach, noting that she even used her

3

personal time to complete assignments. Id. In early June 2012, SAC Johnson again spoke to Burns in the Operations office. D. 61 ¶ 58. He held the bat in a swinging position, tapped it against his left hand and told Burns about his plan to install new carpeting in the Operations office. Id. Johnson abruptly left the room when Burns voiced concerns about Johnson's idea. Id.

Although the parties dispute when this encounter occurred, at some point in June, Burns had a conversation concerning early retirement with an Administrative Officer. D. 69 ¶¶ 150-53; D. 84 ¶¶ 150-53. The parties also dispute whether SAC Johnson approached Burns while she was in the hallway or whether SAC Johnson walked past the office in which she was meeting with the Administrative Officer. D. 69 ¶ 150; D. 84 ¶ 153. It is undisputed, however, that SAC Johnson walked up and down the hallway past the Administrative Officer's office carrying a bat. D. 84 ¶ 153.

On June 14, 2012, Burns informed SFAM Darin Devine that she had decided to retire and that June 22 would be her last day in the office, with her official retirement effective August 1. D. 61 ¶¶ 50-51. On July 10, 2012, Burns initiated a complaint with the Equal Employment Opportunity Commission, alleging that she "was forced to retire because she felt unsafe and could not continue working in a hostile work environment with an individual who habitually brandished a baseball bat as a way to intimidate and threaten" her. D. 69 ¶¶ 73-74. Additionally, Burns filed a parallel complaint with the TSA Office of the Inspector General, id. ¶ 76, which demoted and transferred SAC Johnson upon concluding that it was inappropriate for him to carry a baseball bat, id. ¶¶ 77, 168-70.

**IV.     Procedural History**

Burns instituted this action on August 29, 2013. D. 1. The Secretary and SAC Johnson moved to dismiss all claims except Count I, the gender discrimination claim, on February 4, 2014. D. 18. The Court allowed the motion in part, dismissing all of Burns's claims against SAC Johnson in his individual and official capacities, but denying the motion as to Count I (gender discrimination) and Count VI (sexual harassment based on hostile work environment) as to the Secretary. D. 34. The parties proceeded with discovery. The Secretary has now moved for summary judgment. D. 49. The Court heard the parties on the pending motion and took the matter under advisement. D. 89.

**V.     Discussion**

**A.     Gender Discrimination**

Title VII deems it an "unlawful employment practice for an employer . . . to discriminate against any individual . . ., because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Burns presses two theories to support her claim of gender discrimination. She relies both on the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973) and on the mixed-motive analysis outlined in Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-101 (2003).

   *1.     McDonnell Douglas framework*

The McDonnell Douglas scheme applies where there is no direct evidence of a Title VII violation, as is the case here. Johnson v. Univ. of P.R., 714 F.3d 48, 53 (1st Cir. 2013). Under McDonnell Douglas, "the plaintiff must establish a *prima facie* case of discrimination, which creates an inference of discrimination." Johnson, 714 F.3d at 53. "If a *prima facie* case is established, the burden of production – but not the burden of persuasion – shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the adverse employment action."

5

Id. at 53-54 (internal quotation marks and footnote omitted). If the employer proffers a facially legitimate reason, then the plaintiff is required to show that the employer's reason is a pretext and that the real reason for the adverse employment action is discrimination. Id. at 54.

A *prima facie* case under Title VII requires a plaintiff to show that "(1) she is a member of a protected class; (2) her employer took an adverse employment action against her; (3) she was otherwise qualified; and (4) her position remained open or was filled by a person with qualifications similar to hers." Id. at 53 n.6.

The parties' first dispute concerns whether Burns was the target of an "adverse employment action." "An 'adverse employment action' is one that affects employment or alters the conditions of the workplace." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (internal quotation marks and alternations omitted). Common examples of adverse employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). "A materially adverse change in the terms and conditions of employment 'must be more disruptive than mere inconvenience or an alteration in job responsibilities.'" Id. (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)). An objective standard is applied to determine if an employment action is sufficiently adverse to support a claim under Title VII. Id.

The Secretary argues that Burns did not suffer an adverse employment action, and, therefore, her *prima facie* case fails, because the alleged adverse employment action was "a future change in her job duties which she did not stay long enough to experience." D. 56 at 8. In May 2012, Burns learned that her job duties would change in July, but she decided in June to accept an early retirement offer and her last day in the office was June 22, 2012. Id.

Burns's early departure from her position makes it difficult to assess whether her new duties would have constituted a significant decrease in her responsibilities. Although the primary focus of her job would change, there is no evidence regarding what her new responsibilities would be because they had not been determined at the time of her retirement. A significant decrease in responsibilities supports a conclusion of an adverse employment action, but the mere alteration of job responsibilities does not. Morales-Vallellanes, 605 F.3d at 35. At summary judgment, however, the evidence must be viewed in the light most favorable to Burns, and that evidence supports her contention that her job responsibilities had decreased significantly, but it is not clear whether this change would remain beyond the short term. Burns cites deposition testimony that she "was basically reduced to clerical duties," that "[s]he went from having a great deal of responsibility to answering telephone calls from FAM[s]," and that "[s]he was assigned to menial tasks because all the other planning and whatnot was assigned to other people." D. 70 at 17. There appears to be no evidence, however, concerning the duties she would have assumed beginning in July 2012. See Curry v. Nicholson, 277 Fed. Appx. 628, 632-33 (7th Cir. 2008) (affirming summary judgment as to lack of adverse employment action where plaintiff retired before trying new position involving change in title and transfer to new location but no reduction in pay or benefits).

Even assuming arguendo that Burns presented a *prima facie* case for discrimination, the burden of production shifts to the Secretary to proffer legitimate, non-discriminatory reasons for the reassignment of Burns's duties, McDonnell Douglas, 411 U.S. at 802, which the Secretary has done. The Secretary gives two reasons for SAC Johnson's decision to assign Burns's responsibilities elsewhere. First, SAC Johnson wanted the Boston office to perform international scheduling the same way as the majority of other field offices. D. 56 at 10.

Second, SAC Johnson believed that the new scheduling method would promote leadership and accountability among the SFAMs. Id. These reasons are facially legitimate and reasonable, so the burden shifts back to Burns to demonstrate that these reasons are pretextual and that the true reason for SAC's Johnson's actions was discriminatory. Johnson, 714 F.3d at 54-55.

Burns relies upon two bases for demonstrating pretext. First, she points to allegedly discriminatory comments made by the decision maker (SAC Johnson) as evidence of a discriminatory motive. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996). Second, she relies upon "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" as supporting an inference that the employer acted in a discriminatory manner. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998).

As to comments by the decision-maker, Burns cites several remarks by SAC Johnson which she asserts demonstrate discriminatory intent. SAC Johnson referred to Burns's scheduling program as "stupid." D. 70 at 19. At SAC Johnson's first meeting with Burns, he asked "who are you" and "what do you do for me?" Id. Further, SAC Johnson repeatedly used the pronoun "she" to refer to Burns in conversations with others. Id. Turning to weakness of the proffered legitimate reasons, Burns cites to testimony that one witness did not recall SAC Johnson stating that the reason for the change in scheduling protocol was to mirror other field offices, D. 70 at 20; D. 70-2 at 17, and testimony from two others criticizing the new procedure, D. 70 at 20. (noting that pilot program did not actually increase FAMs' responsibilities and that the leadership reason made "absolutely no sense" because the additional duties required very little time).

8

"[W]here a plaintiff in a discrimination case makes out a *prima facie* case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment." Hodgens, 144 F.3d at 167 (internal quotation marks omitted). A plaintiff who rests on "conclusory allegations, improbable inferences, and unsupported speculation" cannot save herself from summary judgment, but if she "has produced more than that, trial courts should use restraint in granting summary judgment where discriminatory animus is in issue." Id. (internal quotation marks omitted). The Court's role is not to "weigh the evidence . . ., but to determine if there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 US. 242, 249 (1986)).

Even bearing the restraint that Hodgens counsels, it is difficult to conclude, on this record, that Burns has relied upon anything but "conclusory allegations, improbable inferences, and unsupported speculation" to show that the proffered reasons for any change in job responsibilities were pretext for discrimination. SAC Johnson's actions may be appropriately labeled brusque or even disrespectful, but, even when judged in relation to each other, not as demonstrating pretext for discriminatory intent. Nor does reliance upon the criticisms of others of the new procedures undermine the legitimacy of the reasons that the Secretary offered for altering Burns's job responsibilities.

But even if the Court were to conclude that Burns had produced minimally sufficient evidence to show pretext (which, as discussed above, she has not), her case falters with respect to the last McDonnell Douglas requirement. Burns fails to demonstrate that the actual reason for eliminating her duties was discriminatory. Dávila v. Corporación de Puerto Rico para la Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007) (stating that "[a]t summary judgment, this

9

question reduces to whether the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired" for an improper reason); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000) (stating that plaintiff's evidence must be "adequate to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action"); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (noting that plaintiff must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [gender] discrimination") (internal quotation marks omitted).

The evidence to which Burns directs the Court to demonstrate that gender discrimination was the actual motive behind the removal of her primary responsibilities primarily consists of three deposition excerpts. One witness stated that "I absolutely believe . . . the changes that were made because she is female, non-FAM, in a position of responsibility, control and power . . . . D. 70 at 13; D. 70-2 at 25. Another witness said, "I do agree that it was due to her gender." D. 70 at 13; D. 70-4 at 29. The third witness stated, "I believe, [SAC Johnson] felt that because she was female and the position that she held, the responsibility that somebody in a civilian role should not have that, that responsibility." D. 70 at 13; D. 70-5 at 20-21. Burns further points out that two of these witnesses told her that "based on the meeting(s) they attended they felt [Burns] was being targeted by [SAC] Johnson and other male members of the office." D. 70 at 7. The only fact to which Burns refers the Court to support these witnesses' conclusory statements is SAC Johnson's use of the word "she" when referring to Burns. D. 69 ¶ 143; see D. 70-10 at 7 (noting that SAC Johnson "emphasized the word 'she' when referring to" Burns).

The Court observes that a fourth witness, when asked if he believed that SAC Johnson's "attitude towards [Burns] was based on her gender," answered in the affirmative and explained

10

that his answer was based upon the witness's observations of SAC Johnson's interaction with male counterparts in the Boston Field Office versus his interaction with Burns. D. 70-5 at 12-13. When asked why the witness thought SAC Johnson's treatment of Burns was based on her gender, the witness said, "I believe that SAC Johnson didn't like the idea that a female was in a position of such importance in the operations unit, and I think that led to it." Id. at 13.

The subjective beliefs of Burns's co-workers are not a sufficient elucidation of specific facts from which a jury could conclude discriminatory animus was at play here. Burns and her co-workers who provided the testimony cited above may believe that SAC Johnson was motivated by discrimination when he decreased her job responsibilities, but Burns must point to more than "subjective speculation and suspicion." Quinones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006) (affirming summary judgment where plaintiff's affidavit contained "conclusory suspicion" but not specific facts supportive of his allegation of discrimination); see Lewis v. City of Chicago Police Dep't, 590 F.3d 427, 443 (7th Cir. 2009) (upholding exclusion of speculative testimony that decision maker was "out to get" plaintiff); Glass v. Lahood, 786 F. Supp. 2d 189, 218 (D.D.C. 2011) (allowing summary judgment where non-movant submitted affidavit of former employee stating his "subjective belief" that employer engaged in racial discrimination and noting that "[w]hen a plaintiff's own subjective belief that she has been subjected to unlawful discrimination will not suffice, a third-party's unadorned speculation will fare no better"). In addition, while deposition testimony may be used to resist summary judgment, such testimony must "set out facts that would be admissible in evidence." García-González v. Puig-Morales, 761 F.3d 81, 97 (1st Cir. 2014); see Dávila, 498 F.3d at 17 (giving no weight in age discrimination case to plaintiff's affidavit that stated that co-workers had told him that decision maker believed plaintiff was too old to hold his position because statement was hearsay). The

subjective beliefs of Burns and her co-workers do not qualify as facts that would be admissible in evidence.

Setting aside conclusory statements by Burns and her supporters, the specific evidence of discrimination here consists first of SAC Johnson's emphasis on the pronoun "she" in his references to Burns. The use of the feminine pronoun when referring to a woman, however, hardly suffices to demonstrate gender bias. Second, the fourth witness cited above noted that SAC Johnson was short with Burns and spoke with her differently than he did with males in the office. This uneven treatment, however, without evidence connecting it in some way to the adverse employment action, also does not demonstrate that discrimination was the reason for reassigning Burns's duties. In the absence of specific facts supporting more than a speculative conclusion that improper discrimination motivated SAC Johnson's actions, the Court concludes that Burns has failed to meet her burden under McDonnell Douglas. There is not "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." Ahmed v. Johnson, 752 F.3d 490, 497 (1st Cir. 2014) (internal quotation marks omitted).

### 2. *Desert Palace* framework

Burns's claim is no more viable under the mixed motive analysis set forth in Desert Palace. "Mixed-motive analysis applies when the evidence shows that an employer considered both a proscribed factor . . . and one or more legitimate factors . . . in making a challenged employment decision." Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999), rev'd on other grounds, Desert Palace v. Costa, 539 U.S. 90 (2003). If a plaintiff proves that a proscribed factor "played a motivating part in the decision," then the employer must respond with evidence showing it would have taken the same action even if it had not considered the proscribed factor. Id. (internal quotation marks omitted). The Supreme Court has limited the

applicability of the mixed-motive framework "to those infrequent cases in which a plaintiff can demonstrate with a high degree of assurance that the employment decision of which [s]he complains 'was the product of a mixture of legitimate and illegitimate motives.'" Id. (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 247 (1989) (plurality opinion)). Moreover, as under McDonnell Douglas, a mixed motive theory requires a plaintiff to "present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias." Chadwick v. Wellpoint, Inc., 561 F.3d 38, 45 (1st Cir. 2009) (quoting Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 31 (1st Cir. 2003)).

As discussed above, Burns has not provided sufficient evidence that the adverse employment action was motivated even in part by unlawful discrimination. Her evidence on this point consists of the unsupported speculation of her three co-workers that they believe Burns's gender was the primary factor in the removal of the bulk of her duties. SAC Johnson's use of the word "she" and his curt manner in interacting with Burns similarly do not provide a sufficient basis from which to infer discrimination. Burns fails to show an improper discriminatory motive "with a high degree of assurance." Fernandes, 199 F.3d at 580. Without adequate support in the record to support either of Burns's theories with respect to her gender discrimination claim, the Court concludes that summary judgment is warranted.

### B. Sexual harassment

Burns next asserts a sexual harassment claim premised on a hostile work environment. D. 1 ¶¶ 114-18. This claim is limited to SAC Johnson's propensity to carry a baseball bat around the office. D. 35 at 11-12. "To succeed in a hostile workplace environment claim, [a plaintiff] must show: (1) that she is a member of a protected class; (2) that she was subjected to

unwelcome harassment; (3) that the harassment was based on her membership of the protected class; (4) that the harassment was so severe and pervasive that it altered the conditions of her employment and created an abusive work environment; (5) that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." Torres-Negrón v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007).

The Secretary argues that Burns has failed to show that any harassment was severe and pervasive. D. 56 at 15-17. The factors to be considered in determining whether alleged harassment was severe and pervasive include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).

Burns argues that SAC Johnson's carrying of the baseball bat supports her hostile work environment claim. D. 70 at 24-25. "[I]t was the threatening manner in which he brandished the baseball bat during his conversations with [Burns] that distinguishes his interactions with her from . . . males in the office who simply observed [SAC] Johnson holding the bat." Id. at 24. Burns characterizes SAC Johnson's "brandishing" of the bat as "sinister and frightening." Id. at 25. Burns describes SAC Johnson as holding the bat when he said "so you still work here." D. 70 at 4. He was also holding that bat when, on the same day, he acknowledged her adequate job performance, but that he "had some issues" with Burns and that he was "not paying you [Burns] to work from home." Id. Burns further describes two more interactions with SAC Johnson in which he held the bat, but she does not describe any conversation between them. Id. at 6-7, 7-8.

14

She also asserts that SAC Johnson "deliberately walked past [Burns] multiple times while carrying the baseball bat." Id. at 8.

The Court concludes that Burns's interactions with Johnson were so brief and limited that any harassment cannot be characterized as severe and pervasive. Burns's work schedule meant that she was in the office at the same time as SAC Johnson for only a few hours on a total of eight days during which she had four interactions with SAC Johnson while he held the bat. D. 56 at 16. The limited number of their interactions and their relative lack of severity do not support a conclusion that the work environment was hostile to women. SAC Johnson did not threaten Burns with the bat, id., nor did he ever utter anything sexually suggestive or offensive to her. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment to establish an objectively hostile or abusive work environment." Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011) (internal quotation marks omitted). "On the scale of what has been recognized as egregious conduct rising to the required level, this was not close." Ponte v. Steelcase, Inc., 741 F.3d 310, 320-21 (1st Cir. 2014) (concluding that supervisor resting his hand on plaintiff's shoulder while in the car on two occasions was not severe and pervasive and citing cases describing egregious conduct). An "uncomfortable" or "tense working relationship" is not sufficient to constitute a hostile work environment. Colón-Fontánez, 660 F.3d at 44-45.

### C. Constructive discharge

Burns's final claim is for constructive discharge. "[A] plaintiff who seeks to withstand summary judgment on a claim of constructive discharge must point to evidence in the record showing that, as a result of discrimination, her 'working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign.'" Ahern v.

Shinseki, 629 F.3d 49, 59 (1st Cir. 2010) (quoting Marrero, 304 F.3d at 28). "Absent some showing that gender-based discrimination polluted the workplace, the plaintiff['s] constructive discharge claim must fail." Id. Here, because Burns has failed to demonstrate the viability of both her gender discrimination and sexual harassment claims, her claim for constructive discharge must also fail.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the Secretary's motion for summary judgment, D. 49. Given the Secretary's assented-to motion to file this Memorandum and Order initially under seal because of the concern about disclosure of Sensitive Security Information, D. 90, the Court ALLOWS that motion and enters this Memorandum and Order under seal temporarily. Accordingly, the Secretary has until June 25, 2015 to identify any SSI contained in the Memorandum and Order and/or identify any proposed redactions and Burns has until July 1, 2015 to respond to that filing. The Court anticipates unsealing the Memorandum & Order shortly thereafter or, if persuaded by the Secretary's filing, entering a redacted version of the Memorandum & Order.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge